30 F.3d 140
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
James LEE, Defendant-Appellant.
 No. 93-50323.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 5, 1994.
Decided Aug. 4, 1994.
 
 1
 Before: BROWNING and FLETCHER, Circuit Judges, and FITZGERALD,* Senior District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 James Lee appeals his sentence of 51 months, based on a conviction for being a felon in possession of a firearm pursuant to 18 U.S.C. Sec. 922(g)(1). We affirm.
 
 FACTS
 
 4
 During a routine check of federal firearms records, ATF agents discovered documentation of the sale of a Mossberg 12 gauge shotgun to Lee. After confirming that Lee had previously been convicted of two felonies,[1] the agents secured a warrant and searched Lee's home. In a locked closet, they found one Mossberg 12 gauge shotgun and documents connecting Lee to two other guns.
 
 
 5
 Lee pled guilty to one count of being a felon in possession of a firearm on August 17, 1992. At sentencing, he argued for a downward departure on the basis of his excellent employment record, the "benign" nature of his possession of the gun (it was allegedly bought for his mother's protection), and the fact that he purchased it under duress (the necessity of self-protection in his violent neighborhood). With reluctance, the district court found itself unable to depart downward, and sentenced Lee on April 19, 1993 to 51 months in prison.
 
 DISCUSSION
 
 6
 Lee argues that the district court wrongly concluded that a downward departure was not authorized on the basis of his "benign" possession of the shotgun for the protection of his mother, and on the basis of the "incomplete duress" created by his dangerous neighborhood. The government counters that the court was aware it could depart on these grounds but chose not to do so on the facts of this case, and that this discretionary decision is unreviewable.
 
 
 7
 A district court's discretionary refusal to depart downward is not reviewable on appeal. United States v. Morales, 972 F.2d 1007, 1011 (9th Cir.1992), cert. denied, 113 S.Ct. 1665 (1993). However, if the district court did not depart downward because it was under the impression that the Sentencing Guidelines did not authorize it to do so, we review that determination de novo. United States v. Reyes-Alvarado, 963 F.2d 1184, 1189 (9th Cir.), cert. denied, 113 S.Ct. 258 (1992). In considering whether the district court failed to depart as an exercise of discretion or because it felt itself unauthorized to do so, ambiguities in the record will be resolved in the defendant's favor, since "[t]o hold otherwise would unfairly foreclose the defendant from having his sentence reviewed merely because the sentencing court created an ambiguity when announcing its decision." United States v. Brown, 985 F.2d 478, 481 (9th Cir.1993).
 
 A. Incomplete Duress
 
 8
 The district court clearly understood that it was authorized to depart downward based on incomplete duress,[2] but chose not to do so in Lee's case:
 
 
 9
 I am not going to accept the context [should be "concept"] that because he lives in a dangerous neighborhood that amounts to some type of coercion or duress situation where he'd automatically be entitled to a reduction of sentence for possessing a firearm, although I recognize that he certainly does live in an area where there is considerable danger. More and more you can say that about the entire city, or perhaps the County of Los Angeles, but there is no particular factor bearing on him that required this firearm, except the general perception that the area was dangerous, so I decline to reduce the guideline levels for those reasons.
 
 
 10
 Hearing of Nov. 2, 1992, at 9-10 (emphasis added); see also Hearing of Apr. 19, 1993, at 7. The district court correctly recognized that the incomplete duress departure requires that defendant be under a compulsion more stringent than that faced by Lee. See U.S.S.G. Sec. 5K2.12 (incomplete duress is ordinarily a serious threat to body or property, caused by the "unlawful action of a third party"); United States v. Garza-Juarez, 992 F.2d 896, 912 (9th Cir.1993) (noting that Webster's defines duress as "stringent compulsion by threat of danger, hardship or retribution"), cert. denied, 114 S.Ct. 724 (1994). The court denied the downward departure not because it thought the departure was unauthorized, but rather because it found that Lee had not alleged the type of facts that would qualify him for such a departure. This is a discretionary decision which we are not at liberty to review. Morales, 972 F.2d at 1011.
 
 
 11
 Lee relies on the fact that the court indicated that it would give a lower sentence if it could:
 
 
 12
 it sounds rather trite but nevertheless the truth, but the one that you have to tell this to is Congress. They mandated the penalties and [have] taken away the discretion of judges. This might be a case where I would choose a lower sentence if I had choice. I don't think I do.
 
 
 13
 * * *
 
 
 14
 * * *
 
 
 15
 I'm attempting to try [to find a reason for a lower sentence], but I don't think I would be correct in doing so.
 
 
 16
 * * *
 
 
 17
 * * *
 
 
 18
 I don't like it very much, but I feel I have no choice.
 
 
 19
 Hearing of Apr. 19, 1993, at 5-7. This language indicates not that the sentencing judge felt he was unauthorized to depart downward, but that he felt the facts of the case did not allow it. A sentencing judge who concludes that a given departure is authorized, but that the facts of the case before her do not warrant that departure, may still be frustrated with the length of the sentence imposed by the guidelines range or by a mandatory minimum provision, and, on occasion, may express that frustration.
 
 B. Lawful Possession
 
 20
 The situation is somewhat different with regard to a departure for "benign possession" of the shotgun. The district court did not address this argument at the November 2, 1992 hearing, and spoke only one sentence fragment concerning it at the hearing on April 19, 1993: "if he has it in his mother's closet, I would try to distinguish on that, then I'm--I just don't think that I can, counsel." Id. at 7. Although this statement seems somewhat ambiguous, even if we resolve it in Lee's favor and find that the court thought itself unauthorized to depart downward on this basis, Brown, 985 F.2d at 481, Lee is not aided.
 
 
 21
 In enacting the Gun Control Act of 1968, of which Sec. 922(g) was a part, Congress stated,
 
 
 22
 it is not the purpose of this title to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms appropriate to the purpose of hunting, trap shooting, target shooting, personal protection, or any other lawful activity....
 
 
 23
 Pub.L.No. 90-618, Sec. 101, 82 Stat. 1213 (1968) (emphasis added). The sentencing guidelines specifically provide for a substantial decrease in base offense level "if the defendant ... possessed all ammunition and firearms solely for lawful sporting purposes or collection." U.S.S.G. Sec. 2K2.1(b)(2) (emphasis added).
 
 
 24
 On its face, the downward adjustment for "sporting purposes or collection" does not apply to possession for personal protection. We recently refused to extend this downward adjustment to personal protection, saying:
 
 
 25
 we do see a good deal of logic in the Commission's decision to limit the reduction to those who hold a weapon for lawful sporting or collection purposes. Neither of those purposes encompasses the killing or maiming of human beings, but personal protection surely does. Moreover, a personal protection reduction would open a great hole in the Guidelines. Even drug dealers tend to keep their weapons for personal protection purposes.
 
 
 26
 United States v. Lam, 20 F.3d 999, 1002 (9th Cir.1994); see United States v. Uzelac, 921 F.2d 204, 206 (9th Cir.1990) (no downward adjustment warranted where facts were "more consistent with use for personal protection than use as a hunting weapon").
 
 
 27
 Moreover, the sport and collection departure does not in any case apply to the more serious classes of firearm offenders. U.S.S.G. Sec. 2K2.1(b)(2) (downward adjustment available to defendant "other than a defendant subject to subsection (a)(1), (a)(2), (a)(3), (a)(4), or (a)(5)"). Lee, whose prior felonies were a robbery and a controlled substance offense, was sentenced for the latter under Sec. 2K2.1(a)(4), and would thus not be eligible for the lawful use adjustment, even if it did apply to guns purchased for personal protection.
 
 
 28
 For similar reasons, the district court correctly held it was unauthorized to depart downward based on Lee's possession of the shotgun for household protection. See Lam, 20 F.3d at 1004-05 (fact that sawed-off shotgun was purchased for family protection was not sufficient, by itself, to warrant downward departure).
 
 
 29
 AFFIRMED.
 
 
 
 *
 Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Lee was convicted of possession of a narcotic substance in 1986, and of robbery in 1981
 
 
 [2]
 See U.S.S.G. Sec. 5K2.12; United States v. Johnson, 956 F.2d 894, 898 (9th Cir.1992)